Filed 8/14/20  Clearpath Lending v. Bose CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CLEARPATH LENDING, INC. et al., | |
| Plaintiffs and Respondents, | G058370 |
| v. | (Super. Ct. No. 30-2019-01052326) |
| SEAN BOSE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, William D. Claster, Judge.  Appeal dismissed.

Epstein Becker & Green, Richard J. Frey, Susan Graham, and Adriana Galindo for Plaintiffs and Respondents.

Jones, Bell, Abbott, Fleming & Fitzgerald, William M. Turner, Asha Dhillon, Catherine L. Dellecker for Defendant and Appellant.

In this employment dispute, Sean Bose appeals from the trial court's prejudgment order compelling arbitration of his individual claims, dismissing his class claims, and staying his representative claim pursuant to the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) pending arbitration on his individual claims. We conclude the order is nonappealable and dismiss the appeal.

FACTS

Bose worked for Clearpath as a loan originator. As part of his employment agreement with Clearpath, Bose signed an agreement to arbitrate. Clearpath terminated Bose in July 2018.

In February 2019, Clearpath filed suit against Bose for breach of contract, misappropriation of trade secrets, violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200) (UCL), and falsifying timesheets in violation of Labor Code sections 2856 and 2863. Bose filed a cross-complaint against Clearpath and two of its employees (collectively referred to as Clearpath) for individual causes of action for retaliation, discrimination, and wrongful termination; and individual and class wage-and-hour and expense-reimbursement causes of action. Bose's class action claims included a UCL claim. Bose later amended his cross-complaint to include a PAGA claim based upon the same underlying allegations in his initial complaint.[1]

One and one-half months after Clearpath filed suit, it submitted an arbitration demand to Bose. Clearpath offered to stipulate to move the claims in its complaint to arbitration. Bose claimed Clearpath had waived the arbitration provision and refused to submit his claims to arbitration. He did not respond to Clearpath's stipulation offer.

---

[1] Bose later dismissed the portion of his PAGA claim seeking unpaid wages, because the California Supreme Court held that unpaid wages are not recoverable as statutory penalties under PAGA. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 193.)

Less than two months after Clearpath filed the complaint, it moved to compel arbitration. The trial court granted Clearpath's motion to compel arbitration of Bose's individual claims, dismissed the class claims, and stayed the remaining PAGA claim and the claim for injunctive relief under the UCL.

In September 2019, Bose filed a "request" asking the trial court to lift the stay of the PAGA claim (request) and concurrently filed a unilateral stipulation, signed only by Bose's attorney. In his opening brief on appeal, Bose cites to his own request to assert "there are putative class members who are not PAGA aggrieved employees" on whose behalf Bose asserts PAGA claims. The request, however, does not discuss or address putative class members.

In his unsworn unilateral stipulation, Bose stated, without explanation, it was not "feasible" to pursue his individual claims in arbitration unless Clearpath initiated arbitration. In response to Bose's request, Clearpath stated any such request should have been made as part of a noticed motion. It also stated Bose refused to withdraw the request after filing his notice of appeal, even though the trial court lacked jurisdiction to act on the request.

## DISCUSSION

Bose acknowledges an order compelling arbitration is not appealable, but asserts the death knell exception applies here. He contends the doctrine applies because his class claims were dismissed and only his individual claims remain, thereby resulting in an effective final judgment. We disagree. Because a representative PAGA claim remains pending, the order was nonappealable. The appeal is dismissed.

Orders compelling arbitration are considered interlocutory and are not immediately appealable. (Code of Civ. Proc., §1294.) A judicially created exception to this rule, known as the death knell doctrine, applies when an order dismisses class claims while allowing individual claims to remain. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 (*Baycol*) (under the "death knell doctrine," when an "order effectively [rings]

3

the death knell for the class claims, [the court] treat[s] it as in essence a final judgment on those claims, which [is] appealable immediately").) The doctrine also applies to representative actions under the PAGA. "When a plaintiff seeks civil penalties under the PAGA, he or she is not doing so as an individual, but instead as a representative of the state, and on behalf of similarly 'aggrieved' employees." (*Munoz v. Chipotle Mexican Grill, Inc*. (2015) 238 Cal.App.4th 291, 310 (*Munoz*).)

The death knell doctrine requires "an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*Baycol*, *supra*, 51 Cal.4th at p. 759.) "Significantly, the two fundamental underpinnings of the death knell doctrine are lacking when a plaintiff's representative PAGA claim remains pending in the trial court following the termination of the class claims. Despite dismissal of the class claims, the PAGA plaintiff remains incentivized by the statutory scheme to proceed to judgment on behalf of himself or herself as well as the individuals he or she represents. [Citation.]" (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 8 (*Cortez*).)

Where claims under the PAGA remain after the termination of class claims, the legal effect is not that of a final judgment for the putative class members and the death knell doctrine does not apply. In fact, "every appellate court that has addressed this issue . . . has similarly found the death knell doctrine inapplicable when a PAGA claim remains pending after the termination of class claims. [Citations.]" (*Cortez, supra,* 15 Cal.App.5th 1, 8-9.)

Bose asserts a broad PAGA representative claim based upon the same Labor Code violations underpinning the class claims, seeking both civil penalties and recovery of attorney fees. Nevertheless, Bose speculates, without citing to any evidence, some employees left their employment with Clearpath during the intervening time period and thus would not be entitled to recovery under the PAGA claim: "there are putative

4

class members who are not PAGA aggrieved employees and for whom the dismissal of the class action claims sounds the death knell for all of their claims in this action." He asserts, "This is because there was turnover at Clearpath and the longest statute of limitations for Bose's class action claims is four years and the statute of limitations for Bose's PAGA claims is one year [citations]. Therefore, the existence of Bose's PAGA claims does not make the death knell doctrine inapplicable here." He contends unless every putative class member also has a viable PAGA claim, the matter becomes immediately appealable under the death knell doctrine.

We reject Bose's contentions because they are mere speculation unsupported by evidence. He cites to his own request to stay PAGA claims before the trial court in support of his assertion. Furthermore, even if we were to credit the request and its questionable evidentiary value, it makes no mention of putative class members. We disagree with this attempt to expand the death knell doctrine.

Courts have repeatedly rejected application of the death knell doctrine as long as a subset of the putative class members continue to have a stake in the litigation. In *General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247, the Court of Appeal rejected the application of the death knell doctrine in a product liability lawsuit. The court declined to certify a nationwide class and instead certified a statewide class. (*Id.* at p. 249.) The Court of Appeal determined despite the "lesser scope" of the remaining class, the order was not a final appealable judgment. (*Id.* at p. 251.)

Similarly, in *Baycol*, the Supreme Court held "orders that only limit the scope of a class or the number of claims available to it . . . do not qualify for immediate appeal under the death knell doctrine." (*Baycol*, *supra*, 51 Cal.4th at pp. 757-758.) The doctrine only applies where an order is "tantamount to a dismissal of the action as to all members of the class other than plaintiff." (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699.)

*Munoz* and its progeny do not require all putative class members to be part of the PAGA representative action to avoid application of the death knell doctrine. The *Munoz* complaint contained class claims similar to those presented by Bose, including unpaid business-related expenses and improper wage statements, a UCL claim, as well as a PAGA claim. (*Munoz*, *supra*, 238 Cal.App.4th at p. 295.) The trial court denied plaintiffs' class certification motion. (*Id.* at p. 294.) The Court of Appeal dismissed the appeal, finding the survival of PAGA claims precluded applying the death knell doctrine. (*Ibid.*)

Bose, however, relies upon a single quote from *Munoz* describing the contentions raised by plaintiffs to support the application of the death knell doctrine. Defendant asserted plaintiffs sought penalties under the PAGA on behalf of other current and former employees, "'all of whom [were] members of the putative class for which certification was denied.'" (*Munoz*, *supra*, 238 Cal.App.4th at p. 309.) The statement was apparently a quote from defendant's brief. (*Ibid.*) This quote does not change our analysis. The *Munoz* court never held PAGA penalties must be available to each and every member of the putative class or interpret how potential statute of limitations issues would impact class members. Instead, the *Munoz* court relied upon the potential for an award of PAGA penalties to incentivize the plaintiffs: "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification. Denial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment." (*Id.* at p. 311.)

Here, like in *Munoz*, the incentive to pursue litigation further does not depend on all putative class members being entitled to PAGA penalties. Regardless of the recovery Bose may have on his individual non-PAGA claims, he "could still benefit from a successful prosecution of the PAGA claims" and "the inability to proceed as a

6

class action did not sound the death knell of the plaintiff's claim when the plaintiff still had financial incentive to proceed." (*Munoz*, *supra*, 238 Cal.App.4th at pp. 309, 311.) Indeed, in *Munoz*, there were 16,000 potential class members. (*Id*. at p. 296.)

It is reasonable to speculate some of those employees could have left their employment or been terminated in the intervening time period between the one-year PAGA statute of limitation and the four-year statute of limitation applicable to some of the class claims. (*Ibid*.) Nevertheless, the court held the death knell doctrine did not apply. We refuse to broaden the death knell doctrine to require a perfect overlap between each member of the putative class and the PAGA representative action.

Next, we perceive no material risk Bose will not pursue his individual claims to a final award in the absence of the class claims as he alleges in his unilateral stipulation. Bose's PAGA claim provides him with financial incentive to proceed to final judgment. Nowhere in the unilateral stipulation[2] does he explain how it is unfeasible for him to pursue the representative PAGA claim. Indeed, the statutory penalties and recovery of attorney fees present a strong financial incentive to move forward. There is no significant risk a final judgment will not be obtained due to the dismissal of the class claims, and as a result, no basis to apply the death knell doctrine.

Bose again speculates and asserts, without a legal or record citation, that PAGA claims usually settle and thus a final judgment may not be entered. We, like the court in *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 635-636 (*Young*), reject that tactic. The *Young* plaintiff contended the arbitrator could rule against her on her individual claim and thereby eradicate her incentive to pursue PAGA claims. (*Ibid.*) "Our inquiry, however, looks at the impact of the appealed-from interlocutory order. That a *possible* outcome in a *subsequent* order might eliminate plaintiff's incentive to pursue the PAGA claim does not render the current order appealable." (*Id*. at p. 636.)

---

[2] We also question the validity of this so-called, unilateral "stipulation."

7

Finally, we see no basis for treating the appeal as a petition for a writ of mandate, which is limited to "unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.) Specifically, "reviewing an order compelling arbitration by writ should be done sparingly." (*Cortez*, *supra*, 15 Cal.App.5th at p. 10.)

For orders compelling arbitration, unusual circumstances are found only: "'(1) if the matters ordered arbitrated fall clearly outside the scope of the arbitration agreement, or (2) if the arbitration would appear to be unduly time consuming or expensive.' [Citation.]" (*Young, supra*, 2 Cal.App.5th at p. 636.) Bose fails to make a showing of either of these circumstances. Bose does not argue the claims are outside the scope of the arbitration agreement, nor does he contend the agreement is invalid. Instead, Bose opposed the motion to compel arbitration solely on the ground Clearpath waived the right to arbitration by repudiation when it filed its case against him in the trial court. Bose failed to present any facts demonstrating the arbitration would be unduly time-consuming or expensive. As required by California law, Clearpath states it will pay for the costs of arbitration. There are no unusual or extraordinary circumstances warranting writ review.

## DISPOSITION

The appeal is dismissed.  Respondents are awarded their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.