Filed 10/15/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| ISIDRO MIRANDA,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>ANDERSON ENTERPRISES, INC. et al.,<br><br>　　　　Defendants and Respondents. | A140328<br><br>(San Francisco County<br>Super. Ct. No. CGC-13-528923) |

　　　　Isidro Miranda (appellant) appeals from the trial court's order compelling him to arbitrate his individual claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.) and dismissing his representative PAGA claim.[1] In the published portion of this opinion, we conclude that the "death knell" doctrine, which provides an exception to the one final judgment rule when an order allows a plaintiff to pursue individual but not class claims, applies to representative claims as well. In the unpublished portion we agree with appellant that a California Supreme Court opinion issued after the appealed-from order requires reversal.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.

[1] Under PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' " (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–981, fn. omitted (*Arias*).)

BACKGROUND-

The relevant facts are undisputed. Appellant is a former employee of Anderson Enterprises, Inc.; Andy Hansen is the company's general manager.[2] During his employment, appellant signed an "Alternative Dispute Resolution Policy" by which he, among other things, agreed to arbitrate all employment claims and waived the right to arbitrate claims as a class or collective action.

In February 2013, appellant filed the instant class action lawsuit against respondents asserting various wage and hour claims, including a PAGA claim. Respondents filed a petition to dismiss appellant's class and representative claims, compel arbitration of his individual claims, and stay the superior court proceedings.

In September 2013, the trial court granted respondent's petition. The trial court found the arbitration agreement valid and enforceable, dismissed appellant's class and representative claims without prejudice based on the arbitration agreement's waiver, directed appellant to arbitrate his individual claims, and stayed the superior court proceedings pending completion of the arbitration of appellant's individual claims.

DISCUSSION

On appeal, appellant challenges the trial court's order only with respect to his representative PAGA claim, arguing it is contrary to a subsequently-issued California Supreme Court opinion, *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*). We agree.

I. *Appealability*

As an initial matter, respondents contend the trial court's order is not presently appealable. "Orders granting motions to compel arbitration are generally not immediately appealable." (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121.) Appellant argues his appeal falls within the death knell exception, which "provides that an order which allows a plaintiff to pursue individual claims, but prevents the plaintiff from maintaining the claims as a class action, . . . is

---

[2] We refer to Anderson Enterprises, Inc., and Andy Hansen collectively as respondents.

2

immediately appealable because it 'effectively r[ings] the death knell for the class claims.' " (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 585 (*Aleman*); see also *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288 [order finding class arbitration waiver enforceable and directing the plaintiff to arbitrate claims individually was appealable because it "was the 'death knell' of class litigation through arbitration"].) Appealability under the death knell doctrine requires "an order that (1) amounts to a de facto final judgment for absent plaintiffs, under circumstances where (2) the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no formal final judgment will ever be entered." (*In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 759 (*In re Baycol*).)

Respondents claim the death knell doctrine applies only to the dismissal of class claims, not representative PAGA claims. To address this contention, we first compare class actions with representative PAGA actions. Both are forms of representative actions, whereby one or more plaintiffs seek recovery on behalf of nonparties. (*Arias, supra,* 46 Cal.4th at p. 977, fn. 2 ["In a 'representative action,' the plaintiff seeks recovery on behalf of other persons. There are two forms of representative actions: those that are brought as class actions and those that are not."].) In both types of action, the potential recovery is greater if the claim is brought as a class or representative action than it would be if the plaintiff sought only individual relief. (*In re Baycol Cases, supra,* 51 Cal.4th at p. 758; Lab. Code, § 2699, subd. (f)(2) [PAGA penalties are generally "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation"]; see also *Iskanian, supra,* 59 Cal.4th at p. 384 [" '[A]ssuming it is authorized, a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code.' "].) In both, the represented nonparties are bound by any final judgment. (*Arias, supra,* at p. 977, fn. 2 ["If the trial court grants certification, class members are notified that any class member may opt out of the class and that the judgment will bind all members who do not

opt out."]; *id.* at p. 985 ["the judgment in [a representative PAGA] action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding"].)

There are also significant differences between the two forms of representative actions. Most notably, class actions must satisfy certain procedural requirements: "The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.) A plaintiff asserting a representative PAGA claim need not satisfy these requirements. (*Arias, supra,* at p. 975.)[3]

The question is whether the differences are material for purposes of the death knell doctrine. Respondents offer no reason why they should be, and we see none. The rationale underlying the death knell doctrine—" 'that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit to a final judgment and then seek appellate review of an adverse class determination,' " thereby rendering the order "effectively immunized by circumstance from appellate review" (*In re Baycol, supra,* 51 Cal.4th at p. 758)—applies equally to representative PAGA claims.

A recent decision from our colleagues in the Second District supports this conclusion. In *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291 (*Munoz*), the plaintiffs asserted class claims and a representative PAGA claim. (*Id.* at pp. 295–296.) The trial court denied the plaintiffs' motion for class certification and the

---

[3] PAGA claims can, at the plaintiff's election, be brought as class claims. (*Arias, supra,* 46 Cal.4th at pp. 975, 981, fn. 5.)

4

plaintiffs appealed. (*Id.* at pp. 302, 307.) The Court of Appeal concluded that the survival of the representative PAGA claim precluded application of the death knell doctrine: "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification.[4] Denial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment . . . ." (*Id.* at p. 311.) *Munoz*'s analysis of a representative PAGA claim for purposes of the death knell doctrine supports our conclusion that the death knell doctrine applies equally to such claims.

Respondents next argue the death knell doctrine applies only when the class claims are terminated with prejudice, not the case here. We again disagree. The death knell doctrine requires the order be "a de facto final judgment for absent plaintiffs." (*In re Baycol, supra,* 51 Cal.4th at p. 759.) Respondents provide no explanation of how appellant's representative PAGA claim could proceed. In theory, a different plaintiff who has not signed the Alternative Dispute Resolution Policy could be substituted in as the representative plaintiff for this claim. However, respondents submitted a declaration to the trial court stating "[a]ll personnel who commence or continue employment" are required to comply with the arbitration policy. According to this evidence, there are no employees who could assert the representative PAGA claim and the order is therefore

---

[4] As the court explained: "Generally speaking, the civil penalties available under the PAGA are $100 'for each aggrieved employee per pay period for the initial violation and [$200] for each aggrieved employee per pay period for each subsequent violation.' [Citation.] Seventy-five percent of penalties 'recovered by aggrieved employees' must be distributed to the 'Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights,' with the remaining 25 percent to be distributed to the 'aggrieved employees.' [Citation.] A prevailing PAGA plaintiff may recover his or her attorney fees and costs as well. [Citation.] Thus, where, as here, the purported violator has had many employees with earnings over many pay periods, the recovery could be quite substantial." (*Munoz, supra,* 238 Cal.App.4th at pp. 310–311.)

effectively a final judgment for the nonparty employees' PAGA claims. (Cf. *Aleman, supra,* 209 Cal.App.4th at pp. 566, 586 [denial of motion for class certification does not fall under death knell doctrine where denial was without prejudice and based on the failure of the named plaintiffs to demonstrate they were adequate class representatives, and trial court made clear the plaintiffs could renew their motion].)

Respondents do not argue appellant fails to meet the second prong of the death knell doctrine: that "the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered." (*In re Baycol, supra,* 51 Cal.4th at p. 759.) Appellant's attorney submitted a declaration below stating his firm could not represent individual employees outside of the class action context "because of the low damages," and has represented to this court that appellant will not file for arbitration of his individual claims. We are satisfied the requisite risk no final judgment will be entered is present.

Accordingly, the trial court's order is appealable.

II. *Iskanian*

In *Iskanian,* a class action wage and hour case, the trial court dismissed the plaintiff's class and representative claims and compelled the plaintiff to arbitrate his individual claims pursuant to the parties' arbitration agreement. (*Iskanian, supra,* 59 Cal.4th at p. 361.) Our Supreme Court reversed as to the plaintiff's representative PAGA claim, holding "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy" and "the FAA [Federal Arbitration Act] does not preempt a state law that prohibits waiver of PAGA representative actions in an employment contract." (*Id.* at p. 360.)

Under *Iskanian,* the Alternative Dispute Resolution Policy's waiver of appellant's right to bring a representative PAGA action is unenforceable. Respondents' sole argument is that *Iskanian* was wrongly decided. However, *Iskanian* is binding on this court, regardless of any contrary holdings by lower federal courts. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *Montano v. The Wet Seal Retail, Inc.*

6

(2015) 232 Cal.App.4th 1214, 1224, fn. 5 ["We recognize that several federal district courts in this state have found PAGA waivers to be enforceable . . . .  However, ' "[d]ecisions of the lower federal courts interpreting federal law, although persuasive, are not binding on state courts." ' "].)

Appellant has represented to this court that he will not file for arbitration of any individual claims.  Any change in this position will raise questions about how the action should proceed that the parties may address on remand.  (See *Iskanian, supra,* 59 Cal.4th at pp. 391-392 [noting questions the parties may address on remand: "(1) Will the parties agree on a single forum for resolving the PAGA claim and the other claims? (2) If not, is it appropriate to bifurcate the claims, with individual claims going to arbitration and the representative PAGA claim to litigation? (3) If such bifurcation occurs, should the arbitration be stayed pursuant to Code of Civil Procedure section 1281.2?"].)

## DISPOSITION

The order dismissing appellant's representative PAGA claim and compelling arbitration of appellant's individual PAGA claim is reversed, and the matter remanded for proceedings consistent with this opinion.  Appellant is awarded his costs on appeal.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

Superior Court of the City and County of San Francisco, No. CGC-13-528923, Hon.Marla Miller, Judge.

Mallison & Martinez, Stan S. Mallison, Hector R. Martinez, Marco A Palau, Joseph D. Sutton, and Eric S. Trabucco, for Plaintiff and Appellant.

Fine, Boggs & Perkins, LLP, John P. Boggs, David A. Hosilyk and Ian G. Robertson, for Defendants and Respondents.