Filed 4/29/25

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANGEL D. CHAVEZ REYES, | D085178 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1911416) |
| HI-GRADE MATERIALS CO. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, David S. Cohn, Judge. Appeal dismissed.

Bibiyan Law Group, David D. Bibiyan and Henry G. Glitz, for Plaintiff and Appellant.

Pope & Gentile and Daniel K. Gentile, for Defendants and Respondents.

Plaintiff Angel D. Chavez Reyes (Chavez) seeks to appeal an order denying his motion for class certification in a putative wage and hour class action brought against defendants Hi-Grade Materials Co. and Robar Enterprises, Inc. After the order was entered, Chavez's individual claims and four representative causes of action under the Private Attorney General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) remained pending.

On appeal, Chavez argues that the order denying class certification is appealable under the death knell doctrine, which provides an exception to the general rule that interlocutory orders are not immediately appealable. In their respondents' brief, however, defendants correctly point out that the death knell doctrine does not apply when representative PAGA claims remain pending after the trial court has denied class certification. The defendants thus argue that the appeal must be dismissed for lack of jurisdiction. In response, over a year after filing this appeal, Chavez voluntarily dismissed his PAGA claims without prejudice in the trial court. We are therefore confronted with a novel jurisdictional question: Can a putative class action plaintiff unilaterally ring the death knell for the entire class and retroactively create appellate jurisdiction by voluntarily dismissing all remaining representative claims long after class certification has been denied?

We conclude that the answer is no. Chavez is attempting to appeal a nonappealable order, as his PAGA claims remained viable and pending at the time he filed his notice of appeal. His voluntary dismissal of the remaining PAGA claims over a year later was not itself appealable and did not retroactively make the class certification order appealable. We therefore conclude the death knell doctrine does not apply here, and we do not have jurisdiction to entertain Chavez's appeal from the order denying class certification. Any appeal of the class certification order must now await entry of a final judgment disposing of all claims. Accordingly, we dismiss the appeal for lack of jurisdiction.

2

FACTUAL AND PROCEDURAL BACKGROUND

Chavez filed his original class action complaint in April 2019 and filed his First Amended Complaint (FAC) in July 2019.[1] In his FAC, Chavez asserted 12 causes of action against defendants: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods or compensation in lieu thereof; (4) failure to provide rest periods or compensation in lieu thereof; (5) waiting time penalties; (6) wage statement violations; (7) violation of Labor Code section 2802; (8) violation of Business and Professions Code section 17200 et seq.; (9) civil penalties under Labor Code section 226.3; (10) civil penalties under Labor Code section 558; (11) civil penalties under Labor Code section 1197.1; and (12) civil penalties under Labor Code section 2699. Chavez has identified the last four of these claims as PAGA claims.

Chavez filed a motion for class certification in March 2023. Defendants filed their opposition in July 2023, and Chavez filed a reply soon after. The trial court heard oral argument on Chavez's motion simultaneously with another class certification motion in a related class action lawsuit filed against defendants.[2] Although the two lawsuits were filed two weeks apart

---

[1] We take the dates and content of Chavez's complaints from references in other trial court filings and the respondents' brief, as Chavez did not include any pleadings in the appellate record. Defendants argue, perhaps correctly, that the incomplete record precludes us from reaching a decision on the merits. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 [concluding that incomplete record submitted by the defendant was fatal to the appeal].) Given our conclusion that we lack jurisdiction over this matter, however, we need not decide the issue.

[2] We deny defendants' request for judicial notice of the complaint filed in the other class action, as it is not relevant or necessary to resolve this appeal.

and alleged "nearly identical 'wage and hour' claims on behalf of overlapping putative classes," no party ever moved to consolidate the two cases.

The trial court issued its ruling denying class certification in both cases in August 2023. In short, the court found that: although the proposed class would be sufficiently numerous for certification, it could not find the eight proposed subclasses sufficiently numerous; any class that might otherwise be certifiable would have to exclude the direct-hire employees of defendant Robar Enterprises, Inc. based on a lack of typicality; some of the claims relating to employees of defendant Hi-Grade also suffered from lack of typicality; individual inquiries, rather than common questions of law and fact, would predominate for the remaining alleged claims; the plaintiffs failed to demonstrate that the proposed class action was manageable; and they also failed to demonstrate the superiority of class adjudication. For all of these reasons, the court denied the "combined motion for class certification" and directed that the two lawsuits "proceed separately as individual claims." The trial court also noted in its order that Chavez had also asserted claims for penalties under PAGA, but that the PAGA claims are "not subject to class certification and [are] therefore not addressed in the motion or in this ruling."

Chavez filed a notice of appeal in September 2023, stating that he was appealing from an "[o]rder denying class certification, immediately appealable under the Death Knell Doctrine."

DISCUSSION

Defendants argue the appeal should be dismissed because Chavez cannot appeal from an order denying class certification where PAGA claims

---

(*Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29, fn. 2.)

4

remain, and his voluntary dismissal of the PAGA claims before a final judicial determination did not render the class certification order appealable. We agree.

I

We begin by considering whether the order denying class certification was appealable at the time it was made in August 2023, when the PAGA claims were still pending.

"The right to appeal in California is generally governed by the 'one final judgment' rule, under which most interlocutory orders are not appealable." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754 (*Baycol*), citing Code Civ. Proc., § 904.1; see also *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 652 (*Meinhardt*) ["[A]n appeal must be taken 'from a judgment that is not intermediate or nonfinal but is the one final judgment.' "].) This rule is " 'a fundamental principle of appellate practice' " that precludes a party from appealing until there is a final judgment resolving the entire action. (*Baycol*, at p. 756.) Piecemeal disposition and multiple appeals in a single action are oppressive and costly, and a review of intermediate rulings should thus await the final disposition of the case. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.) Appellate courts do not have jurisdiction over a direct appeal taken from a nonappealable judgment or order. (*Ibid.*; *Meinhardt*, at p. 652.)

The death knell doctrine is a " 'tightly defined and narrow' " exception to the one final judgment rule in the class action context. (*Baycol, supra*, 51 Cal.4th at p. 760.) An order denying class certification is generally not a final judgment, as it leaves the action intact as to the individual plaintiff's claims. (*Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 811 (*Stephen*).) Under the death knell doctrine, however, an order "is appealable if it

5

effectively terminates the entire action as to the class, in legal effect being 'tantamount to a dismissal of the action as to all members of the class other than plaintiff.' " (*Ibid.*)

"The doctrine is animated by two basic considerations: (1) The order terminating class claims is the practical equivalent of a final judgment for absent class members; and (2) without the possibility of a group recovery, the plaintiff will lack incentive to pursue claims to final judgment, thus allowing the order terminating class claims to evade review entirely." (*Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 8 (*Cortez*), citing *Baycol, supra*, 51 Cal.4th at p. 758.) For an order to be appealable under the death knell doctrine, therefore, it must " 'amount[] to a de facto final judgment for absent plaintiffs, under circumstances where . . . the persistence of viable but perhaps de minimis individual plaintiff claims creates a risk no *formal* final judgment will ever be entered.' " (*Cortez*, at p. 8, quoting *Baycol*, at p. 759.) An appeal is permitted under California law in this situation because the order would essentially "r[i]ng the death knell for the class claims" and render further proceedings in the action impractical and unlikely. (*Baycol*, at p. 757; see also *Stephen, supra*, 235 Cal.App.3d at p. 811.)[3]

Chavez contends the death knell doctrine applies here because the trial court's August 2023 order denying class certification stated that the action would proceed only as to his individual claims. Defendants dispute this,

---

[3]    Federal law, by contrast, provides that a federal court of appeals "may permit an appeal from an order granting or denying class-action certification," but is not required to do so even where the order would effectively end the case. (*Microsoft Corp. v. Baker* (2017) 582 U.S. 23, 31 (*Baker*); see also Fed. Rules Civ. Proc., rule 23(f), 28 U.S.C.) This discretionary rule "allows courts of appeals to grant or deny review 'on the basis of *any* consideration.' " (*Baker*, at pp. 32–33.)

6

pointing out that, in addition to his class and individual claims, Chavez also brought representative claims for civil penalties under PAGA. In the August 2023 order, the trial court acknowledged Chavez's pending PAGA claims, stating that they were not subject to class certification and therefore were not addressed in the class certification motion or the court's ruling. According to defendants, because Chavez's PAGA claims remained intact after the order denying class certification, the order is not a death knell order and therefore is not appealable. We agree.

It is well established that the death knell doctrine does not apply when representative PAGA claims remain pending after the trial court has denied class certification. (*Cortez, supra*, 15 Cal.App.5th at p. 9 [concluding "the death knell exception to the one final judgment rule does not apply when a PAGA claim remains pending in the trial court following termination of the class claims"]; *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 243–244 [same]; *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 635 (*Young*) [same]; *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 310–311 (*Munoz*) ["Denial of class certification where the PAGA claims remain in the trial court would not have the 'legal effect' of a final judgment . . . ."].) When a plaintiff seeks penalties under PAGA, he does so not as an individual, but instead as a representative of the state and on behalf of similarly aggrieved employees.[4] (*Munoz*, at p. 310.) Under those

4    Under PAGA, an aggrieved employee who was affected by at least one Labor Code violation may seek civil penalties for violations that affected other employees. (Lab. Code, § 2699, subd. (a); *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 761.) The plaintiff "may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations." (*Miranda v. Anderson Enterprises, Inc.* (2015) 241 Cal.App.4th 196, 199, fn. 1.) Under current law, the civil penalties must be distributed 65 percent to the Labor Workforce and

circumstances, the possibility of group recovery under PAGA still exists despite the termination of the class claims. (*Cortez*, at p. 8.) "Given the potential for recovery of significant civil penalties if the PAGA claims are successful, as well as attorney fees and costs, plaintiffs have ample financial incentive to pursue the remaining representative claims under the PAGA and, thereafter, pursue their appeal from the trial court's order denying class certification." (*Munoz*, at p. 311.) Chavez thus "remain[ed] incentivized by the statutory scheme to proceed to judgment on behalf of himself" as well as other aggrieved employees who were members of the putative class, because his PAGA claims were not dismissed. (*Cortez*, at p. 8; see also *Munoz*, at p. 311.)

Chavez cites *Allen v. San Diego Convention Center Corp., Inc.* (2022) 86 Cal.App.5th 589 (*Allen*) in support of his argument to the contrary, asserting that *Allen* supports the proposition that "the continued presence of a PAGA claim does *not* categorically prevent a class action plaintiff from appealing the denial of a motion for class certification." In *Allen*, the appellate court found that even though the plaintiff's PAGA claim had not been outright dismissed, the alleged violations that formed the basis of the claim were no longer viable, which also meant the PAGA claim was no longer viable. (*Allen*, at p. 596.) Accordingly, the class certification order there "left the case without either class or PAGA claims and constituted the death knell of the litigation." (*Id*. at p. 597.) Chavez does not argue that his PAGA claims were no longer viable after the class certification order. Nothing in the rationale of the order undermined the viability of the PAGA claims, and Chavez

---

Development Agency "and 35 percent to the aggrieved employees." (Lab. Code, § 2699, subd. (m).) The latter share must be distributed to all aggrieved employees, not just the plaintiff bringing the action. (*Moorer v. Noble L.A. Events, Inc.* (2019) 32 Cal.App.5th 736, 741–743.)

dismissed them over a year later only in response to defendants' argument that they were an obstacle to his invocation of the death knell doctrine in this appeal. Even if we were inclined to address the issue, we do not have Chavez's complaint before us to be able to determine whether the PAGA claims were somehow derivative of or dependent on the class claims. *Allen* therefore does not assist Chavez.

Although Chavez's class claims were dismissed, the representative PAGA claims remained at the time the trial court entered the order denying class certification. We therefore conclude the order did not constitute a "de facto final judgment" for the putative class members, did not sound the death knell on all of Chavez's claims on behalf of other class members, and was not immediately appealable upon entry. (*Baycol, supra*, 51 Cal.4th at p. 759; *Young, supra*, 2 Cal.App.5th at p. 635; see also *Munoz, supra*, 238 Cal.App.4th at p. 311.)

There is one additional wrinkle. For some of the putative class members at least, the class certification order was the end of the road as a practical matter. Chavez filed this action in April 2019 and sought certification of a class of approximately 1,000 non-exempt employees going back to April 2015. He presumably did so because the statute of limitations for the non-PAGA Labor Code and unfair competition claims is either three or four years. (See *Ali v. Daylight Transport, LLC* (2020) 59 Cal.App.5th 462, 478.) But the statute of limitations for PAGA claims is only one year. (See *Brown v. Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 839.) Thus, there must be putative class members who are not eligible for PAGA relief because they were employed by the defendants during the class period, but not within the one-year PAGA statute of limitations. For this subset of the class, the

9

order denying class certification was effectively the death knell for any potential relief.

Even so, we still conclude that the order was not immediately appealable upon entry. There was a significant overlap between the putative class and the group of aggrieved employees who would have been entitled to share in the PAGA penalties. These were not separate and distinct groups. After the class certification ruling, a significant portion of the putative class still could have obtained relief on the pending PAGA claims. In these circumstances, the death knell doctrine did not apply while the PAGA claims remained pending. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 149, fn. 18 [death knell doctrine not applicable where there was "significant overlap" between a portion of the class that was decertified and the rest of the class and the partial decertification order was not tantamount to a dismissal of the action as to all members of the class]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 2:39.6, p. 2-32 ["Class action interim orders are *not* directly appealable if they do not have the 'death knell' effect of dismissing the entire action as to all class members."].)

II

We next address the effect of Chavez's voluntary dismissal of his PAGA claims on the appealability of the order denying class certification. After defendants raised the issue of the still-pending PAGA claims in their respondents' brief in August 2024, Chavez voluntarily dismissed those claims without prejudice in the trial court in November 2024.[5] He also argued in

---

[5]    We grant Chavez's unopposed request for judicial notice of the November 2024 voluntary dismissal of his PAGA claims attached as Exhibit B to his request, because the document is a court record that is "both relevant to and helpful toward resolving the matters before this court."

10

his reply brief that his voluntary dismissal meant "the PAGA claims that were left unaddressed in the trial court's challenged order are no bar to appellate review."

We issued an order for supplemental briefing inviting the parties to address the effect of Chavez's voluntary dismissal on the appealability issue. Defendants filed a supplemental brief arguing that Chavez's voluntary dismissal of his PAGA claims was an improper attempt to circumvent the death knell doctrine. Defendants emphasize that Chavez dismissed his PAGA claims *without* prejudice, and he therefore still has the ability to assert those claims after this appeal concludes. Moreover, defendants contend, the application of the death knell doctrine should be determined at the time the appeal is filed to prevent procedural gamesmanship. Chavez did not submit a supplemental brief, but he contends in his request for judicial notice that the voluntary dismissal of his PAGA claims permits application of the death knell doctrine, which in turn allows this court to undertake appellate review of the trial court's class certification order.

We conclude that defendants have the better argument. As an initial matter, the voluntary dismissal itself is not an appealable order. (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 380 [voluntary dismissal is ministerial act, not judicial act, and thus not appealable]; *Yancey v. Fink* (1991) 226 Cal.App.3d 1334, 1342–1343 (*Yancey*) ["[A] voluntary dismissal by a plaintiff is accompanied by a ministerial act of the clerk, filing from which no appeal lies."].) Regarding appealability, " 'there is no kinship of a voluntary dismissal to a final judgment.' " (*Yancey*, at p. 1343.) And "[b]y

_____

(*Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418; see also Evid. Code, § 452, subd. (d).) We deny Chavez's request for judicial notice of Exhibit A, an October 2024 request for voluntary dismissal of the PAGA claims that was never filed because it was rejected by the trial court.

11

definition, a voluntary dismissal without prejudice is not a final judgment on the merits." (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 879; see also *Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1001.) Because the voluntary dismissal of PAGA claims is not itself appealable, we cannot treat Chavez's appeal from the class certification order as a premature appeal from the voluntary dismissal entered over a year later. (Cal. Rules of Court, rule 8.104(d) & (e).)

Nor does Chavez cite any authority holding that a plaintiff's voluntary dismissal of PAGA claims can retroactively transform a nonappealable order denying class certification into an appealable order. As a general matter, unless followed by the entry of a final judgment, a voluntary dismissal of claims does not make a prior nonappealable order immediately reviewable. (See, e.g., *Yancey, supra*, 226 Cal.App.3d at pp. 1342–1343 [dismissing appeal for lack of jurisdiction where plaintiff tried to appeal from nonappealable order sustaining demurrer then tried to cure the jurisdictional problem by voluntarily dismissing the case rather than obtaining a final judgment of dismissal].) We cannot see how a nonappealable event occurring over a year after a nonappealable order can retroactively create appellate jurisdiction where none existed before.[6]

_____

6    In some circumstances outside the class action context, if a judgment has been entered without resolving all claims, and the plaintiff voluntarily dismisses the remaining claims with prejudice while the appeal is pending, the appellate court has discretion to amend the judgment nunc pro tunc to reflect the voluntary dismissal and achieve the necessary finality for appellate jurisdiction. (See, e.g., *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308–309.) But Chavez does not invoke this line of authority, does not explain how it would apply in this context, and does not ask us to amend the class certification order to reflect his voluntary dismissal of the PAGA claims without prejudice. "We are disinclined to exercise discretion in favor of a party who declines to ask us to do so." (*Good v. Miller* (2013) 214

Although there is no California authority directly on point, the United States Supreme Court addressed a similar question under federal law in *Baker, supra*, 582 U.S. 23. We recognize that the applicable federal law is not identical to California law, but the holding of *Baker* is at least analogous and therefore instructive.

In *Baker*, the plaintiffs' class claims were stricken from their complaint, but their individual claims remained pending. (*Baker, supra*, 582 U.S. at pp. 33–34.) The plaintiffs petitioned the Ninth Circuit for permission to appeal the district court's ruling, arguing that the interlocutory order striking the class claims "created a 'death-knell situation'." (*Id.* at p. 34.) The Ninth Circuit denied the petition. (*Ibid.*) In response, the plaintiffs sought to dismiss their individual claims with prejudice in the district court, with the intent of appealing the district court's order striking their class allegations after it entered a final judgment. (*Id.* at p. 35.) The district court granted the parties' stipulated motion to dismiss, and the plaintiffs then appealed, challenging only the district court's "interlocutory order striking their class allegations, not the dismissal order which they invited." (*Ibid.*) This time, the Ninth Circuit rejected the defendant's argument that the plaintiffs' voluntary dismissal was "explicitly engineered to appeal the District Court's interlocutory order striking the class allegations" and thus "impermissibly circumvented [Federal Rules of Civil Procedure] Rule 23(f)." (*Ibid.*) The Ninth Circuit concluded it had jurisdiction to decide the merits of

Cal.App.4th 472, 476.) Even assuming we have the discretion to make such an order, and that Chavez had made such a request and it would render the class certification order appealable, we would decline to exercise our discretion for the reasons explained in this opinion.

13

the appeal and held that the district court had abused its discretion in striking the plaintiffs' class allegations.  (*Ibid.*)

The United States Supreme Court granted certiorari to resolve the following question: Do federal courts of appeals have jurisdiction under section 1291 of title 28 of the United States Code to review an order denying class certification (or an order striking class allegations) after the named plaintiffs have voluntarily dismissed their remaining claims with prejudice? (*Baker, supra*, 582 U.S. at p. 36.)  Without any dissent, the Supreme Court answered the question in the negative, concluding that because the plaintiffs' "dismissal device subverts the final-judgment rule" and the established process for determining when nonfinal orders may be immediately appealed, "the tactic does not give rise to a 'final decision' under [title 28 United States Code section] 1291." (*Baker*, at p. 37.)

The Supreme Court held that plaintiffs in putative class actions cannot transform a tentative interlocutory order—such as an order denying class certification—"into a final judgment within the meaning of [title 28 United States Code section] 1291 simply by dismissing their claims with prejudice." (*Baker, supra*, 582 U.S. at p. 41.)  If the court were to hold otherwise, Congress's final-judgment rule " 'would end up a pretty puny one.' " (*Ibid.*) Contrary to the *Baker* plaintiffs' argument, the "firm final-judgment rule is not satisfied whenever a litigant persuades a district court to issue an order purporting to end the litigation." (*Ibid.*)  Finality, the court explained, " 'is not a technical concept of temporal or physical termination.' " (*Ibid.*)  Rather, "[i]t is one 'means [geared to] achieving a healthy legal system,' [citation], and its contours are determined accordingly." (*Ibid.*)

Notwithstanding the differences between federal and state law on the death knell doctrine, we find the reasoning of the Supreme Court in *Baker*

14

persuasive, and we conclude that it applies by analogy here. " 'From the very foundation of our judicial system,' the general rule has been that 'the whole case and every matter in controversy in it [must be] decided in a single appeal.' " (*Baker, supra*, 582 U.S. at p. 36.) This general rule "preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." (*Id*. at pp. 36–37.) Just as Congress codified the federal "final-judgment rule" in title 28 United States Code section 1291 (*Baker*, at p. 36), our Legislature codified California's "one final judgment rule" in Code of Civil Procedure section 904.1 (*Meinhardt, supra*, 16 Cal.5th at p. 652). Although exceptions such as the death knell doctrine exist, "every exception to the final judgment rule not only forges another weapon for the obstructive litigant but also requires a genuinely aggrieved party to choose between immediate appeal and the permanent loss of possibly meritorious objections." (*Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 967.) They should therefore "not be allowed unless clearly mandated." (*Ibid.*)

The specific exception urged by Chavez is not clearly mandated, nor are we persuaded that it should be. As in federal court, allowing a putative class action plaintiff to sound the death knell of their own class or representative claims would undermine the finality principle underlying the one final judgment rule, "invite[] protracted litigation and piecemeal appeals," and condone the use of the "voluntary dismissal-tactic" as an end-run around the rules against interlocutory appeals. (See *Baker, supra*, 582 U.S. at p. 37.) It would also encourage plaintiffs to abandon PAGA claims brought on behalf of the state and other aggrieved employees solely for the purpose of manufacturing appellate jurisdiction to obtain review of an otherwise

15

nonappealable class certification order. We therefore conclude that Chavez's voluntary dismissal of his PAGA claims does not render the trial court's order denying class certification retroactively appealable.[7]

Relying on *Cortez, supra*, 15 Cal.App.5th 1, Chavez asserts that "[a]t least one other California Court of Appeal has exercised appellate review under similar circumstances"—in other words, where the plaintiff voluntarily dismissed his PAGA class claims. This is not an accurate characterization of the *Cortez* ruling. There, the court expressly declined to decide the "intriguing jurisdictional question" of whether a plaintiff can "unilaterally sound the death knell by voluntarily dismissing the representative action that serves as an obstacle to appealability under the death knell doctrine." (*Cortez*, at p. 9.) Instead, under circumstances not present here (including requested review of an order compelling arbitration of the plaintiff's claims), the *Cortez* court exercised its discretion to construe the appeal as a petition for writ of mandate: "In light of the legal uncertainty surrounding the effect of Cortez's voluntary dismissal of the PAGA claim on the appealability under the death knell doctrine of the superior court's order terminating class claims *and the parties' agreement that the propriety of the termination of the class claims is properly before this court, as well as the lack of any prejudice or delay that would be caused by our intervention at this point*, we exercise our discretion to treat the appeal from the termination of class claims as a petition for writ of mandate and consider the merits of the order dismissing

---

7      Our conclusion is also consistent with the goal of promoting clarity and uniformity when it comes to jurisdictional deadlines. (See *Meinhardt, supra*, 16 Cal.5th at p. 657.) As the California Supreme Court has explained, " 'bright lines are essential in this area, to avoid both inadvertent forfeiture of the right to appeal and excessive protective appeals by parties afraid they might suffer such a forfeiture.' " (*Ibid.*)

the class claims and the prior order compelling arbitration of Cortez's individual claims." (*Id*. at p. 10, italics added.)

Unlike the defendant in *Cortez*, defendants here do not agree that this matter is properly before this court. In fact, they explicitly argue to the contrary, and assert that permitting review of Chavez's appeal would result in further delay and expense to the defendants, thus prejudicing them.

Nor has Chavez argued, much less demonstrated, that we should construe his purported appeal as a petition for writ of mandate.[8] Although appellate courts have the power to entertain an appeal from a nonappealable judgment or order by treating it as a petition for extraordinary writ, they "should not exercise that power except under unusual circumstances," such as where "the record sufficiently demonstrates the lack of adequate remedy at law necessary for issuance of the writ." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401; see also *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455 (*Mid-Wilshire*) [declining to treat appeal as writ petition in part because appellate courts must "reserve the exercise of that discretionary power for cases involving compelling evidence of 'unusual circumstances' "].) Chavez has not attempted to make such a showing here, and we see no compelling evidence of unusual or extraordinary circumstances that would warrant a departure from the one final judgment rule. Moreover, as we have explained, the interests of justice would not be served by treating the appeal as a petition for writ of mandate, as it might encourage procedural gamesmanship and prejudice defendants in the process. (See *Mid-Wilshire*,

---

8    At oral argument, Chavez requested for the first time that we construe his appeal as a petition for writ of mandate, but he acknowledged he had not previously raised this argument.

at p. 1455.)  We therefore decline to assume jurisdiction by treating this appeal as a petition for writ of mandate.

We emphasize that Chavez may still seek appellate review of the class certification order after entry of a final judgment on all remaining claims. Although the death knell doctrine ordinarily allows an immediate appeal when only individual claims remain as a result of an order denying class certification, here the reason only individual claims remain is not because of the trial court's order but because of Chavez's voluntary decision to dismiss the surviving PAGA representative claims long after he filed this appeal.  It is not our proper function to exercise appellate jurisdiction over an interlocutory order just to extricate a litigant from circumstances of his own creation.

## DISPOSITION

The appeal is dismissed for lack of jurisdiction.  Defendants are entitled to their costs on appeal.

BUCHANAN, J.

WE CONCUR:

IRION, Acting P. J.

KELETY, J.

18